## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOUTHWEST GUARANTY, LTD. | § | CASE NO. 10-32200-H3-11 |
| | § | |
| DEBTOR | § | (Chapter 11) |

**EMERGENCY MOTION TO CLARIFY THAT AUTOMATIC STAY (I) DOES NOT PROHIBIT DEBTOR FROM PROCEEDING WITH STATE COURT LITIGATION AND (II) PROHIBITS COMPASS BANK FROM SEEKING ANY DETERMINIATION AS TO THE OWNERSHIP OF THE PARLIAMENT PARTNERS NOTE**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**\*\*EMERGENCY RELIEF HAS BEEN REQUESTED**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Southwest Guaranty, Ltd. ("SWG" or "Debtor"), Debtor in this bankruptcy case and, pursuant to 11 U.S.C. § 362(a), hereby files its Motion to Clarify that the Automatic Stay (I) Does Not Prohibit Debtor From Proceeding with State Court Litigation and (II) Prohibits Compass Bank from Seeking Any Determination as to the Ownership of the Parliament Partners Note and in support thereof respectfully state as follows:

### Summary and Emergency Basis

1.      In October 2009, Parliament Partners, Inc. defaulted in its obligations owed to the Debtor SWG, while diverting money to its affiliated entity.   On February 12, 2010, SWG

instituted the State Court Litigation against Parliament Partners, Inc., its affiliates and insiders, for breach of contract and fraudulent conveyance and also seeking the appointment of a receiver to take control of the resort owned by Parliament Partners, Inc.   Compass Bank subsequently sought to intervene in the State Court Litigation and have a determination made that it is the owner of the Parliament Partners Note.  Compass Bank is the Debtor's senior secured lender that retains a lien on the Parliament Partners Note.  The State Court Litigation was stayed in its entirety by the state court when this bankruptcy case was filed.

2.      An emergency exists because SWG needs to proceed immediately with the State Court Litigation so that a receiver can be appointed in order to prevent further diminution of its collateral.  However, the state court will not proceed without an order from this Court allowing the litigation to continue.

3.      Additionally, the Debtor has unsuccessfully attempted to work out an agreement with Compass Bank to allow the State Court Litigation to proceed against Parliament Partners, Inc. and have this Court determine the ownership of the Parliament Partners Note, as the note is property of the Debtor's estate.  Accordingly, the Debtor requests that the Court enter an order confirming that SWG may proceed with the State Court Litigation against Parliament Partners, Inc. and the other named defendants and prohibiting Compass Bank from seeking any determination of the ownership of the Parliament Partners Note other than in this Court.

## I.  <u>Jurisdiction and Venue</u>

4.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. § § 157, 1334.

5.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

6.      Venue of the Debtor's Chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1409.

## II.      Background Information

### A.  Overview of the Debtor

7.      Southwest Guaranty, Ltd. ("SWG" or "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on March 17, 2010 (the "Petition Date").  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's bankruptcy case and no official committee of unsecured creditors has yet been established.

8.      SWG is a private commercial real estate lender based in Houston, Texas specializing in small balance commercial real estate loans.  The company was established in 2003, by President Russell T. Gaines and Milestone Venture Group, as a successor company to one started in 1995 by Mr. Gaines, in response to a need in the real estate community for alternative financing solutions for borrowers who might not otherwise qualify for typical bank and /or conduit financing.  Historically, SWG originated, funded, sold and serviced a broad range of commercial real estate loans for all types of borrowers and properties, with loan amounts generally ranging anywhere from $250,000 up to $5 million.

9.      For the last eighteen months, the Debtor's primary source of income has been derived from the Parliament Partners Note described herein, which has provided SWG with gross income of approximately $70,000 per month.  Additional monthly income of approximately $4,000-$4,500 is received by the Debtor from other loans that it services.

10.     As of the Petition Date, the Debtor had assets of approximately $8.5 million, consisting primarily of a note receivable from Parliament Partners Note in the amount of $8.3 million and liabilities of approximately $6 million.

### B.  Financing

11.     In July 2003, SWG entered into that certain Revolving Line of Credit Agreement, together with associated loan documents and subsequent modifications, wherein the Debtor was provided a revolving line of credit from Texas State Bank, *nka* Compass Bank, for borrowings of up to $15 million, together with interest ("RLOC"). The RLOC was converted to three separate term loans, two of which have been paid in full.  The only remaining unpaid loan owed to Compass Bank directly relates to the Debtor's note receivable from Parliament Partners discussed herein ("Term Loan").

12.     The Term Loan is secured by a lien on substantially all of the Debtor's assets, including personal property, accounts receivable, inventory and a collateral assignment of the Parliament Partners Note described herein.  As of the Petition Date, the principal balance on the Term Loan was approximately $5.4 million.

### C.  Parliament Partners Note Receivable

13.     In December 2003, SWG entered into a mortgage, deed of trust, security agreement and related documents with Parliament Partners, Inc. ("Parliament Partners"), whereby SWG agreed to loan Parliament Partners $7.5 million, plus interest, to refinance a resort facility in the vicinity of Orlando, Florida ("Parliament Partners Note").  The Parliament Partners Note is secured by the real property subject to the mortgage and Parliament Partners has executed an Assignment of Leases and Rents in favor of SWG.  The value of real property

securing the Parliament Partners Note greatly exceeds the total amount of the debt owed to SWG.

14.     In August 2009, after Parliament Partners defaulted in its obligations to SWG, the parties entered into a Forbearance Agreement whereby the Parliament Partners Note was restated and renewed, effective January 2009, and scheduled to mature in January 2010 ("Forbearance Agreement"). The Forbearance Agreement required that Parliament Partners repay the principal balance of approximately $6.9 million, plus accrued  interest and associated expenses of approximately $1.4 million, together with interest, in twelve variable monthly payments ranging from approximately $70,000-$76,500 per month, beginning February 2009.  The current balance on the Parliament Partners Note is approximately $8.3 million.

### D.  Events Leading to Bankruptcy

15.     The collapse of the real estate market and credit squeeze over the last eighteen months has significantly impacted SWG's operations and its ability to fund new loans.  The company's business model was predicated on its ability to sell loans in to the secondary market. With the credit crunch SWG lost its ability to sell existing loans and therefore the ability to fund new loans.  SWG has drastically reduced operations and expenses and is now operating with three employees.  Currently, the company's operations primarily involve servicing its existing portfolio and collecting the Parliament Partners Note, which accounts for 98% of its notes receivable.

16.     Parliament Partners defaulted on the terms of its Forbearance Agreement referenced herein by failing to make payments due for October 1, 2009 and every month thereafter.  This default caused SWG to default in its obligations to Compass Bank, as successor

in interest to Texas State Bank.  Without the income from the Parliament Partners Note, SWG does not have the ability to pay Compass Bank.

17.     On or about February 12, 2010, SWG filed a Verified Complaint against Parliament Partners, its principals and The Gardens, LLC, an affiliate of Parliament Partners, in the Circuit Court of the Ninth Judicial Circuit of Orange County, Florida under *Case No. 2010-CA-004108-O*, styled as *Southwest Guaranty, Ltd. v. Parliament Partners, Inc., Donald Martin Granastein, Gerald Cadesky and The Gardens, LLC* and for breach of agreement, fraudulent transfer, constructive trust and an Emergency Motion to Appoint a Receiver (collectively "State Court Litigation"). A copy of the Complaint is attached as Exhibit "A."  On February 26, 2010, Compass Bank filed a Motion to Intervene in the State Court Litigation ("Motion to Intervene") and on March 3, 2010, filed an objection to SWG's Verified Complaint and Motion to Appoint Receiver.

18.     In the Motion to Intervene, Compass Bank asserts that it is the real party in interest in the State Court Litigation as a result of the collateral assignment by SWG and requests that the Florida state court make such a determination.  A hearing on the Motion to Intervene was scheduled for March 17, 2010, thereby prompting this Chapter 11 filing.

19.     Despite Compass Bank's contentions, SWG is the owner of the Parliament Partners Note and has sufficient equity in the Parliament Partners receivable to satisfy its obligation to Compass Bank and fund operations.

20.     The Debtor now seeks entry of an order allowing the Debtor to prosecute the State Court Litigation in the state court but prohibiting any determination as to the ownership of the Parliament Partners Note absent further order of this Court.

### III.   Legal Authority

A.  <u>Automatic Stay Does Not Apply to Actions By the Debtor</u>

21.     The automatic stay provisions of Section 362(a) he Bankruptcy Code provide, in

pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301,
>
> 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of --

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

(8) ) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtors tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

*11 U.S.C. §362(a)* (West 2010).

22.     The Fifth Circuit has interpreted Section 362(a) to stay only to those actions

"against" the Debtor, not "by" the Debtor.  *Freeman v. Commissioner of Internal Revenue*

*Service,* 799 F.2d 1091 (5th Cir. 1986).   "[W]hether a proceeding is against the debtor within the

meaning of Section 362[(a)] is determined from an examination of the posture of the case at the initial proceeding." *Id.* at 1092-1093.   If the initial proceeding is initiated by the Debtor, it is not "against" the Debtor and the proceeding is not stayed by Section 362.  Consequently, in this case, the Debtor is not stayed from proceeding with the State Court Litigation.

> B. <u>Automatic Stay Prevents Compass Bank from Seeking a Determination of its Interest in the Parliament Partners Note without Leave of the Bankruptcy Court</u>

23.      However, Section 362 does apply to stay any action contemplated by Compass Bank with respect to the Parliament Partners Note, as this would constitute an action "against" the Debtor.

24.      The Bankruptcy Court may stay claims "against" the Debtor, while allowing claims "by" the Debtor in the same litigation to proceed.

25.      In determining the application of Section 362, a court must look to the nature of each claim or counterclaim to determine whether the stay applies. "Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue. Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out claims asserted by the plaintiff are stayed."  *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); *see also In re Lessig Const., Inc.*, 67 B.R. 436 (Bankr. E.D. Pa. 1986) (in adversarial action brought by debtor in bankruptcy court, defendant must obtain relief from automatic stay before asserting any counterclaim against debtor); *Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D.Del.1989) (where plaintiff-debtor enters bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff).

26.     Thus, the automatic stay prevents Compass Bank from seeking any determination as to the extent of its interest in the Parliament Partners Note since the note is property of the Debtor's estate within the meaning of 11 U.S.C. §541.

### IV.  Conclusion

27.     The Debtor requests that the Court enter an order confirming that SWG may proceed with the State Court Litigation against Parliament Partners, Inc. and the other named defendants and prohibiting Compass Bank from seeking any determination of the ownership of the Parliament Partners Note absent further order of this Court.

WHEREFORE, PREMISES CONSIDERED, SWG prays that the Court enter an order (i) confirming that SWG may proceed with the litigation styled as SOUTHWEST GUARANTY, LTD. V. PARLIAMENT PARTNERS, INC., DONALD MARTIN GRANASTEIN, GERALD CADESKY AND THE GARDENS, LLC, CASE NO. 2010-CA-004108-O PENDING IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT OF ORANGE COUNTY, FLORIDA; (ii) prohibiting Compass Bank from seeking any determination of the ownership of the Parliament Partners Note absent further order of this Court; and (iii) grant such other and further relief as is just and proper.

Respectfully submitted,

HOOVER SLOVACEK LLP

*/s/ Melissa A. Haselden*
By:_____
       EDWARD L. ROTHBERG
       State Bar No. 17313990
       MELISSA A. HASELDEN
       State Bar No. 00794778
       ANNIE E. CATMULL
       State Bar No. 00794932
       5847 San Felipe, Suite 2200
       Houston, Texas 77057
       Telephone: 713.977.8686
       Facsimile:  713.977.5395

PROPOSED ATTORNEYS FOR DEBTOR

## Certificate of Conference

Counsel for Debtor conferred with counsel for Compass Bank on several occasions about this Motion.  To date, the Compass Bank has not agreed to the relief requested herein.

*/s/Edward L. Rothberg*
Edward L. Rothberg, Counsel for Debtor

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing Motion has been served via the ECF system, facsimile or first class mail postage prepaid on April 5, 2010, to the parties shown on the Service List attached.

*/s/ Melissa A. Haselden*
MELISSA A. HASELDEN

**SERVICE LIST**
**Southwest Guaranty, Ltd., Debtor**
**Case No. 10-32200-H3-11**

| | | |
|---|---|---|
| Southwest Guaranty Investors, Ltd.<br>Attn: A. Kelly Williams<br>Three Riverway, Suite 1010<br>Houston, TX 77056 | Diane Livingstone<br>Office of the United States<br>515 Rusk, Room 3516<br>Houston, TX 77002 | Internal Revenue Service<br>P O Box 21116<br>Philadelphia, PA 19114 |
| Internal Revenue Service<br>Insolvency Section<br>1919 Smith MAIL STOP HOU 5022<br>Houston, TX 77002 | Leo Vasquez<br>Harris County Tax Assessor-Collector<br>P O Box 4622<br>Houston, TX 77210-4622 | Houston ISD Tax Office<br>P O Box 4668<br>Houston, TX 77210-4668 |
| Harris County, Et Al.<br>c/o John P. Dillman<br>Linebarger Goggan Blair & Sampson<br>P O Box 3064<br>Houston, TX 77253-3503 | Texas Workforce Commission<br>Bankruptcy Section<br>P.O. Box 149080<br>Austin, Texas 78714-9080 | Texas Comptroller of Public Accounts<br>Revenue Accounting Division<br>Bankruptcy Section<br>P.O. Box 13528<br>Austin, Texas 78711-3528 |
| **Secured Creditors:** | BBVA Compass Bank<br>fka Texas State Bank<br>423 Highway 6<br>Sugar Land, TX 77478 | Bruce Ruzinsky<br>Jackson & Walker LLP<br>1401 McKinney, Suite 1900<br>Houston, TX 77010 |
| Green Mountain Finance Fund, LLC<br>80 Washington Street, Suite 2-2<br>Norwalk, CT 06854 | | |
| **Unsecured Creditors:** | AT&T<br>P O Box 769<br>Arlington, TX 76004 | Carlyle Financial, LLC<br>Attn: Alissa Gaines<br>266 Post Road East<br>Westport, CT 06880 |
| CBRE<br>Attn: Mark Schulze<br>601 NW Loop 410, Suite 350<br>San Antonio, TX 78216 | Charles Francis<br>1202 Seagler Apt. 176<br>Houston, TX 77042 | CIT Technology<br>21146 Network Place<br>Chicago, IL 60673-1211 |
| Comcast<br>Attn: Legal Department<br>One Comcast Center<br>Philadelphia, PA 19103 | Federal Express<br>Attn: revenue Recovery / Bankruptcy<br>3965 Airways Blvd Module G 3rd Floor<br>Memphis, TN 38116 | First Data Global Leasing<br>4000 Coral Ridge Drive<br>Mail Stop C230<br>Coral Springs, FL 33065 |
| Russell T. Gaines<br>Three Riverway, Suite 1285<br>Houston, TX 77056 | Keating & Schlitt<br>Attn: Ken Schlitt<br>250 East Colonial Drive, Suite 300<br>Orlando, FL 32801 | Konica Minolta Business Solutions<br>15120 Northwest Freeway, Suite 100<br>Houston, TX 77040 |

Konica Minolta Business Solutions USA
100 Williams Drive
Ramsey, NJ 07746

Live Oak Environmental Consultants
Attn: Gary Martins
2714 Cypress Point, Suite C
Missouri City, TX 77459

John C. MacFarlane
Three Riverway, Suite 1010
Houston, TX 77056

McCarter & English
Attn: William Taylor
100 Mulberry Street
Newark, NJ 07101-0652

Milestone Venture Group
Attn: A. Kelly Williams
Three Riverway, Suite 1010
Houston, TX 77056

Office Depot
P O Box 630813
Cincinnati, OH 45263-0813

Ozarka #215
6661 Dixie Hwy, Suite 4
Louisville, KY 40258

Reb Mendel M'Rimonov, LLC
45 Taaffe Place
Brooklyn, NY 11205-1410

Southwest Guaranty Management Inc.
Three Riverway, Suite 1010
Houston, TX 77056

U-Haul Center 1-10 West
10220 Old Katy Road
Houston, TX 77043

Verizon
Verizon Wireless Bankruptcy Administrati
PO Box 3397
Bloomington, IL 61702

A. Kelly Williams
Three Riverway, Suite 1010
Houston, TX 77056

Winderweedle, Haines, Ward & Woodman PA
Attn: Brad Saxton
P O Box 880
Winter Park, FL 32790-0880

eFiled in the Office of Clerk of Court, Orange County Florida 2010 Feb 12 06:15 PM  Lydia Gardner

EXHIBIT "A"

# IN THE CIRCUIT COURT OF THE
# NINTH JUDICIAL CIRCUIT IN AND FOR
# ORANGE COUNTY, FLORIDA

| | |
|---|---|
| **SOUTHWEST GUARANTY, LTD., a Texas limited partnership,**<br><br>       **Plaintiff,**<br><br>**vs.**<br><br>**PARLIAMENT PARTNERS, INC., a Florida corporation,<br>DONALD MARTIN GRANATSTEIN,<br>GERALD CADESKY, and<br>THE GARDENS, LLC, a Florida limited liability company,**<br><br>       **Defendants.** | **CASE NUMBER: _____<br>COMPLEX BUSINESS<br>LITIGATION** |

# VERIFIED COMPLAINT
# FOR DAMAGES FOR BREACH OF AGREEMENT,
# FRAUDULENT TRANSFER, CONSTRUCTIVE TRUST AND
# <u>APPOINTMENT OF A RECEIVER</u>

Comes now SOUTHWEST GUARANTY, LTD., a Texas limited

partnership ("SWG" or "Plaintiff"), by and through the undersigned attorney, and

files this Verified Complaint (the "Complaint") against PARLIAMENT

PARTNERS, INC., a Florida corporation ("Borrower"), DONALD MARTIN

GRANATSTEIN ("Granatstein"), GERALD CADESKY ("Cadesky" together

with Granatstein the "Guarantors"), and THE GARDENS, LLC, a Florida limited liability company ("The Gardens"), and alleges:

## GENERAL ALLEGATIONS

### Parties, Jurisdiction and Venue

1. SWG is a Texas limited partnership with its principal place of business located in Texas. SWG is the owner and has a direct interest in the note and mortgage encumbering the Property.

2. Borrower is a Florida corporation with its principal place of business in Orange County, Florida.

3. Granatstein, an individual, is a principal of the Borrower and a guarantor of Borrower's debt to Plaintiff.

4. Cadesky, an individual, is a principal of the Borrower and a guarantor of Borrower's debt to Plaintiff.

5. The Gardens is a Florida limited liability company with its principal place of business in Orange County, Florida, and is an affiliate of the Borrower. Granatstein and Cadesky are principals of The Gardens.

6. This action, in part, involves a claim for damages in excess of $15,000 and equitable relief. Jurisdiction is proper pursuant to § 26.012(2), Fla. Stat., and venue is appropriate pursuant to §47.021, Fla. Stat.

<u>Factual Allegations</u>

7.  On or about December 26, 2003, SWG and Borrower entered into a Loan Agreement (the "Loan Agreement") whereby SWG agreed to lend Borrower the principal amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Loan").  A true and correct copy of the Loan Agreement is attached hereto and made a part hereof as Exhibit "A."

8.  The Loan is evidenced by that certain Note dated December 26, 2003, in the principal amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) as amended, restated and renewed by that certain Renewal Note in the principal amount of Seven Million Sixteen Thousand One Hundred Forty-Seven and 56/100 Dollars ($7,016,147.56) executed and delivered to SWG by Borrower on or about August 20, 2009, with effective date of January 1, 2009, bearing interest as provided therein (as amended, restated and renewed, the "Note").  A true and correct copy of the Note is attached hereto and made a part hereof as Exhibit "B."

9.  As security for the Loan evidenced by the Note, Borrower executed and delivered to SWG that certain Mortgage, Deed of Trust, Security Agreement and Assignment of Leases dated December 26, 2003 and recorded on January 7, 2004, in Official Records Book 7255, Page 2589, as modified by that certain Mortgage

Modification dated August 20, 2009, with effective date of January 1, 2009, and recorded September 10, 2009, in Official Records Book 9932, Page 2100 all of the Public Records of Orange County, Florida. (as modified, the "Mortgage"). A true and correct copy of the recorded Mortgage is attached hereto and made a part hereof as Exhibit "C." The Mortgage encumbers the real property (the "Property") described in the Mortgage.

10. On or about December 26, 2003, as security for the Loan evidenced by the Note, Borrower executed and delivered to SWG that certain Assignment of Leases and Rents (the "Assignment of Rents"). The Assignment of Rents was recorded on January 7, 2004, in Official Records Book 7255, Page 2620 of the Public Records of Orange County, Florida. A true and correct copy of the recorded Assignment of Rents is attached hereto and made a part hereof as Exhibit "D."

11. On or about December 26, 2003, the Guarantors each executed and delivered to SWG a Guaranty (the "Original Guaranty"). Pursuant to the terms of the Original Guaranty, the Guarantors each, jointly, severally, and unconditionally guaranteed to SWG the payment and performance of the Borrower's obligations under the terms of the Loan Documents. On or about August 7, 2009, and August 12, 2009, Granatstein and Cadesky, respectively executed and delivered to SWG

-4-

reaffirmations of the Guaranty (the "Reaffirmations of Guaranty", together with the Original Guaranty the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as Exhibit "E."

12. On or about January 7, 2004, and May 8, 2009, SWG perfected its interest in the collateral owned by Borrower (the "Personal Property") by filing UCC-1 Financing Statements in the Florida Secured Transaction Registry document Nos.: 200405850792 and 200900488121 respectively. True and correct copies of the filed UCC-1s are attached hereto and made a part hereof as Exhibit "F." A description of the Personal Property is included in Exhibit "F."

13. On or about December 26, 2003, SWG collaterally assigned to Texas State Bank (now Compass Bank) the Loan (the "Collateral Assignment") as security for a loan to SWG from Compass Bank.  A true and correct copy of the recorded Collateral Assignment is attached hereto and made a part hereof as Exhibit "L."

Forbearance

14.  On or about August 20, 2009, the Borrower, Guarantors and SWG entered into a forbearance agreement (the "Forbearance Agreement") wherein the Borrower and Guarantors acknowledged their payment defaults and agreed to perform certain actions in exchange for SWG's agreement to forbear from

exercising its rights and remedies.  A true and correct copy of the Forbearance

Agreement is attached hereto and made a part hereof as Exhibit "G."

15.  The documents referenced in paragraphs 8 through 14 above are

described collectively as the "Loan Documents."

<u>Default Under the Loan Documents</u>

16.  The Borrower has defaulted under the terms of the Loan Documents,

which the Plaintiff currently owns.

17. Borrower's default has caused the default of SWG under the loan from

Compass Bank.

18. Borrower failed to make the payments due under the Loan Documents

for October 1, 2009, and every month thereafter.  The failure to make a payment

due under the Loan Documents constitutes a default under the Loan Documents.

19. By letter dated November 13, 2009, Plaintiff advised Borrower of the

ongoing default and demanded cure thereof (the "Default Notice Letter").  A true

and correct copy of the Default Notice Letter is attached hereto as Exhibit "H."  To

date, despite demand the payment default has not been cured.

20. Borrower also failed to repay all outstanding principal and accrued

interest within ten days of the stated maturity date of the Note, January 1, 2010

(the "Maturity Date").   The Borrowers' failure to deliver all of the aforesaid amounts due to the Plaintiff constitutes a default under the Loan Documents.

21.  Plaintiff has demanded payment from the Borrower and Guarantors, but no payment has been made.

22. Pursuant to the terms of the Loan Documents, all applicable cure periods have expired.

23.  Plaintiff has performed all of its obligations under the Loan Documents.

24. All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

25. The Plaintiff has retained Winderweedle, Haines, Ward & Woodman, P.A. to prosecute this action on its behalf and is obligated to pay this firm a reasonable fee for its services.  The Plaintiff is entitled to recover from Borrower and Guarantors the attorneys' fees and costs that it incurs in the collection of this action pursuant to the terms of the Loan Documents.

## COUNT I - BREACH OF FORBEARANCE AGREEMENT

26. This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

27. Plaintiff reaffirms and realleges each of the allegations set forth in paragraphs 1-25 of this Complaint as though fully set forth herein.

28. The Borrower owes Plaintiff the amount of $35,000.00, plus pre-judgement interest and additional charges and expenses, attorneys' fees, and costs due under the Forbearance Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff all sums, charges, and expenses due to Plaintiff under the Forbearance Agreement, including damages, attorneys' fees, and costs and such other relief as may be necessary and proper.

**COUNT II -**
**ACTION FOR FRAUDULENT TRANSFER UNDER CHAPTER 726,**
***FLORIDA STATUTES***

29. This is an action against Defendants Borrower, Granatstein, Cadesky and The Gardens pursuant to Chapter 726, *Florida Statutes*, the Uniform Fraudulent Transfer Act.

30. Plaintiff reaffirms and realleges each of the allegations set forth in paragraphs 1-25 of this Complaint as though fully set forth herein.

31. Pursuant to the Loan Documents, the Plaintiff is a "Creditor" of Borrower and Guarantors, as that term is defined under Section 726.102 of the Uniform Fraudulent Transfer Act.

32. Pursuant to the terms of the Loan Documents, Borrower and Guarantors are "Debtors" as that term is defined under Section 726.102 of the Uniform Fraudulent Transfer Act.

33. Defendant The Gardens is a "Transferee" as that term is defined under Section 726.102 of the Uniform Fraudulent Transfer Act.

34. Defendant The Gardens is an "Affiliate" and an "Insider" as those terms are defined under Section 726.102 of the Uniform Fraudulent Transfer Act.

35. The Borrower and Guarantors owe Plaintiff the principal amount of $6,920,444.64, plus pre-judgement interest and additional charges and expenses, attorneys' fees, and costs due under the Loan Documents.

36. Subsequent to the execution of the Loan Documents, Borrower, at the direction of Defendants Granatstein and Cadesky, began transferring funds to The Gardens to support its operations. Specifically, and without limitation, according to the balance sheets provided to Plaintiff and statements made to Plaintiff by Granatstein, Borrower has transferred several million dollars over the course of the Loan and at least several hundred thousand dollars to The Gardens over the past two years. *See* Borrower's Balance Sheets dated 7/31/07, 7/31/08, 12/31/08 and 7/31/09 attached hereto and made a part hereof as Exhibit "J."

37. Defendants Granatstein and Cadesky caused these transfers to occur and benefitted from the transactions by increasing their equity interest in The Gardens to the detriment of the Plaintiff. Conversely, the Plaintiff has not received payments owed under the Loan Documents because the funds of Borrower that should have been used to service and repay the Loan were wrongfully funneled to The Gardens.

38. These transfers occurred at a time when Borrower was "insolvent", as that term is defined under the Uniform Fraudulent Transfer Act, because Borrower was not paying its debts as they became due or because the Borrower's liabilities exceeded its assets.

39. Further, Borrower's transfer of revenues to The Gardens was fraudulent as to the Plaintiff because Borrower was "insolvent" at the time of the transfer or became insolvent as a result of the transfer and Borrower failed to receive reasonably equivalent value from Borrower contemporaneous with the value of the transfer.

40. In the alternative, the transfer to The Gardens was fraudulent because it was made with the intent to hinder, delay, or defraud creditors, including the Plaintiff.

-10-

41. Equity requires that the funds transferred from Borrower to The Gardens be set aside and be paid over to Borrower, and then to Plaintiff, in accordance to the terms of the Loan Documents.

WHEREFORE, pursuant to § 726.108, *Florida Statutes*, Plaintiff requests this Court:

      (a)    avoid the transfer or transfers to The Gardens to the extent necessary to satisfy the Plaintiff's claim;

      (b)    attach the funds transferred to The Gardens, or attach other property of The Gardens to satisfy Borrower's debt to Plaintiff;

      (c)    enjoin Defendant Borrower from transferring any other funds to The Gardens; and

      (d)    appoint a Receiver to take charge of the funds transferred from Borrower to The Gardens and to take charge of any other properties of the transferee.

## COUNT III - (ACTION FOR CONSTRUCTIVE TRUST)

42. This is an equitable action against Defendant The Gardens, Granatstein and Cadesky for imposition of a constructive trust.

43. Plaintiff reaffirms and realleges each of the allegations set forth in paragraphs 1 through 25, inclusive, and paragraphs 31 through 41, inclusive of this Complaint as though fully set forth herein.

44. As is more particularly set forth above, Defendant Borrower at the direction of Defendants Granatstein and Cadesky wrongfully transferred funds from Borrower to its affiliate The Gardens.

45. Additionally, Section 3(a) of the Loan Agreement prohibited the Borrower from directly or indirectly making any loans, advances or distributions to the Guarantors or any affiliate, such as The Gardens, without written authorization of Plaintiff. Plaintiff did not give written authorization for any of the transfers.

46. The Defendants have transferred funds from Borrower to The Gardens for the purpose of increasing the value of Granatstein's and Cadesky's ownership interest in The Gardens. In doing so, Defendants Granatstein and Cadesky have received value which, rightfully, in equity and good conscience, they should not be permitted to retain.

47. The equities are with the Plaintiff and against the Defendants. The funds transferred to The Gardens should be returned to Borrower and paid to the Plaintiff pursuant to the terms of the Loan Agreement.

WHEREFORE Plaintiff requests this Court impose a constructive trust over the funds transferred from Borrower to Defendant The Gardens and to take charge of any other properties of the transferee and grant such other relief as this Court may deem necessary and proper.

## COUNT IV - ACTION TO APPOINT RECEIVER

48. This is an action for the appointment of a Receiver pursuant to the Loan Documents, common law, and § 726.108, *Florida Statutes*.

49. Plaintiff reaffirms and realleges each of the allegations set forth in paragraphs 1 through 25, inclusive, and paragraphs 32 through 42, as though fully set forth herein.

50. The Court may appoint a receiver over the assets of a corporation where property is being mismanaged, or is in danger of being lost to stockholders or creditors through mismanagement. *See* Bird Road Commercial Sites, Inc. v. Feldstein, 214 So. 2d 658 (Fla. 3d DCA 1968).

51. Further, pursuant to the terms of the Loan Documents, the Plaintiff has a clear right to recover from the Defendants and to have the benefit of the Property and Personal Property described in the Loan Documents. Specifically, Section 23(g) of the Mortgage and Sections 1 and 2 of the Assignment of Rents provide that in the event of an Event of Default, as a matter of right, the Plaintiff is entitled

to the appointment of a receiver to safeguard the Property and Personal Property and to collect Rents.

52. For the 2008 fiscal year (August 2008 - July 2009) the Borrower had net ordinary income of $1,362,256.93. For the months of August and September, 2009, the Borrower had net ordinary income of $135,778.77. Despite having more than ample funds to service the Loan the Borrower was at least thirty (30) days delinquent in making payments during that time and eventually ceased making payments altogether beginning with the amounts owed for October, 2009 (less than 2 months after entering the Forbearance Agreement). True and correct copies of Borrower's Income Statement, provided by Borrower to Plaintiff, for the 2008 fiscal year and August/September 2009 are attached hereto as Exhibit "K".

53. Defendants Granatstein and Cadesky as principals of Borrower, are in control of Borrower, and have enabled transfers to the affiliate The Gardens.

54. As of December 31, 2008, Borrower had transferred to The Gardens more than Two Million Nine Hundred Thousand and 00/100 Dollars ($2,900,000.00).

55. After being confronted about the transfers, Borrower intentionally changed the format of the 7/31/09 Balance Sheet provided to Plaintiff so as to conceal the additional amounts transferred to The Gardens.

-14-

56. Defendant has failed to pay the amounts owed under the terms of the Loan Documents and has instead elected to transfer several million dollars over the term of the Loan and at least several hundred thousand dollars over the past two years to its affiliate The Gardens for the personal gain of the Guarantors to the detriment of creditors.

57. The Borrower's assets are subject to waste and dissipation as a result of the ongoing massive fund transfers to the affiliate venture to the detriment of creditors.

58. Borrower's transfers and refusal to honor the terms of the Loan Documents has put SWG's interest in the Loan Documents in severe jeopardy. SWG has pledged its interest in the Loan Documents as security for a loan from Compass Bank.  Borrower's fraudulent transfers and refusal to make payments owed SWG under the Loan Documents have prevented SWG from making certain payments required under the loan from Compass Bank, thus putting SWG at risk of being sued by Compass Bank and having its collateral, the interest in the Loan Documents, foreclosed.

59. SWG has been put in a precarious position by the wrongful actions of the Defendants and will suffer irreparable injury as a result of any further dissipation of Borrower's assets.

60. There is no adequate remedy at law to prevent this harm from occurring or continuing to occur. Without the appointment of a Receiver, SWG's interest in the Loan Documents will be lost and SWG will be subject to further suit from Compass Bank.

61. Thus, to prevent waste and dissipation and to protect SWG's interest in the Loan Documents, this Court should appoint a Receiver to take control of the assets of Borrower; to operate Borrower for the benefit of Borrower's creditors, including the Plaintiff; and to provide audited quarterly financial reports to this Court.

WHEREFORE, Plaintiff respectfully requests this Court to issue an Order Appointing a Receiver for the purposes of taking control of the assets of Borrower; to carry on the business of Borrower for the benefit of Borrower's creditors, including Plaintiff, and to provide quarterly financial reports to this Court and carrying out the duties and responsibilities of a Receiver pursuant to Florida law.  Plaintiff further requests the following:

(a)   avoid the transfer or transfers to The Gardens to the extent necessary to satisfy the Plaintiff's claim;

(b)   attach the funds transferred to The Gardens, or attach other property of The Gardens to satisfy Borrower's debt to Plaintiff;

-16-

(c)    enjoin Defendants Granatstein, Cadesky, Borrower and their employees and agents from transferring any other funds to The Gardens or otherwise dissipating the assets of Borrower;

(d)    appoint a Receiver to take charge of the funds transferred from Borrower to The Gardens and to take charge of any other properties of the transferee;

(e)    enjoin Defendants Granatstein, Cadesky, Borrower and their employees and agents from interfering with the receiver in the process of performing his or her duties; and,

(f)    granting such other relief as the Court may deem necessary and proper.

DATED this 12th day of February, 2010.

Respectfully submitted,

**WINDERWEEDLE, HAINES, WARD & WOODMAN, P.A.**
390 N. Orange Avenue, Suite 1500
Post Office Box 1391
Orlando, FL 32802-1391
(407) 423-4246
(407) 423-7014 (Fax)
Attorneys for Plaintiff

By:  /s/ Michael P. Carolan
Bradley M. Saxton, Esq.
Florida Bar No.: 855995
J. Jeffrey Deery, Esq.
Florida Bar No.: 0861332
Michael P. Carolan, Esq.
Florida Bar No.: 0051998

## VERIFICATION

Under penalties of perjury, I, RUSSELL GAINES as President of SOUTHWEST GUARANTY, LTD., a Texas limited partnership, declare that I have read the foregoing Plaintiff's Verified Complaint and that the facts stated in it are true, this 12th day of February, 2010.


RUSSELL GAINES
President, Southwest Guaranty, Ltd.


STATE OF TEXAS
COUNTY OF Harris

SWORN TO AND SUBSCRIBED before me, this 12 day of February, 2010, by RUSSELL GAINES, as President and authorized representative of SOUTHWEST GUARANTY, LTD., a Texas limited partnership, who ☒ is personally known to me or ☐ produced _____ _____ as identification.

SARA MOREN
Notary Public, State of Texas
My Commission Expires
September 05, 2012

Notary Public
My Commission Expires: 09 - 15 - 12

-19-