IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| SOUTHWEST GUARANTY, LTD., | ) ) | CASE NO. 10-32200-H3-11 |
| Debtor, | ) ) | |

MEMORANDUM OPINION

The court has held a hearing on the "Emergency Motion (I) for Interim Authority to Use Cash Collateral (II) to Incur Post Petition Indebtedness under 11 U.S.C. §363, §364 and §105 and (III) Request for Preliminary and Final Hearings" (Docket No. 11), the "Emergency Motion to Clarify That Automatic Stay (I) Does Not Prohibit Debtor from Proceeding with State Court Litigation And (II) Prohibits Compass Bank from Seeking Any Determination As to the Ownership of the Parliament Partners Note" (Docket No. 12), the "Emergency Motion for Order Authorizing Payment of Pre-petition Compensation, Taxes, and Benefits and Request for Expedited Hearing" (Docket No. 13), and the "Debtor's Emergency Motion for Order (I) Authorizing Debtor to Furnish Cash Deposit for Adequate Assurance of Utility Service under 11 U.S.C. §366 and (II) Prohibiting Utility Companies from Discontinuing Services" (Docket No. 14).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment and Order to Show Cause will be entered.  The

court will additionally enter an order to show cause why the above captioned case should not be dismissed. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Southwest Guaranty, Ltd. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 17, 2010. Debtor remains as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Prepetition, Debtor was in the mortgage servicing business. Debtor had lines of credit with large banks. Debtor would originate mortgage loans (both residential and commercial), hold the loans for three to eight months, then sell most of the mortgage loans on the secondary market.

Prior to 2008, Debtor had between 14 and 16 employees, and serviced between $40 million and $75 million in loans.

In July, 2003, Debtor obtained a $15 million line of credit from Texas State Bank.[1] In connection with the transaction, Debtor executed a Loan Agreement (Compass Bank Exhibit 1), a Revolving Line of Credit Note (Compass Bank Exhibit 2), and a Security Agreement (Compass Bank Exhibit 3). The

---

[1] Compass Bank has appeared as the successor to Texas State Bank.

2

security agreement grants to Compass Bank a security interest in, inter alia, Debtor's cash.

On December 26, 2003, Parliament Partners, Inc. ("PPI") executed a note payable to Debtor, in the original principal amount of $7.5 million.  The note initially required PPI to make monthly payments of $62,939.73, with the balance maturing on January 1, 2009.  (Compass Bank Exhibit 5).  PPI also executed a "Mortgage, Deed of Trust, Security Agreement and Assignment of Leases" addressing real property located in Orange County, Florida (Compass Bank Exhibit 6), and an "Assignment of Leases and Rents" to Debtor (Compass Bank Exhibit 7).

On the same date, Debtor executed a "Security Agreement and Collateral Assignment" in favor of Texas State Bank with respect to the note made by PPI.  (Compass Bank Exhibit 8).

Russell Gaines, the president of Debtor, testified that Texas State Bank funded ninety percent of the loan to PPI.  He testified that Debtor provided funds for ten percent of the loan.

Gaines testified that, since 2005, Debtor has attempted to sell the PPI note.  He testified that efforts to sell the note were unsuccessful, because of the nature of PPI's business.[2]

Gaines testified that he pressured PPI to seek refinancing of the note with another lender.  He testified that,

---

[2] Gaines testified that PPI operates a destination resort for persons with alternative lifestyles.

3

during the two years prepetition, PPI received one offer for such refinancing, but turned it down because PPI believed the interest rate was too high.

Gaines testified that he indorsed the PPI note to Texas State Bank, on behalf of Debtor, and delivered possession of the note to Texas State Bank.

Gaines testified that, prior to 2009, Debtor received approximately $65,000 per month from PPI, and paid approximately $40,000 per month to Compass Bank.  He testified that in September, 2009, Debtor negotiated a forbearance agreement with PPI under which PPI was to pay $70,000 per month, plus escrows for taxes and insurance.  He testified that PPI immediately defaulted on the agreement.  He testified that PPI has made only one payment, in the amount of $25,000, since September, 2009.

Gaines testified that, on the petition date, PPI owed approximately $8.3 million on the PPI note.  He testified that Debtor owes Compass Bank approximately $5.4 million.  He testified that, other than payments from PPI, Debtor has income in the amount of $4,000 to $5,000 per month from servicing other loans.

Gaines testified that he has reviewed the financial reports of PPI, and believes that PPI is diverting funds from its operations to an affiliate of PPI rather than making payments to Debtor.  He testified that Debtor filed suit prepetition against

PPI in Florida.  He testified that, after Compass Bank attempted to intervene in the Florida suit, asserting that Compass Bank is the owner of the note, Debtor dismissed its Florida suit against PPI.

Debtor's Schedule D reflects that, other than the debt owed to Compass Bank, Debtor has one other secured debt, listed as contingent, unliquidated, and disputed, in an unknown amount.  (Docket No. 28).

Debtor's Schedule F lists $1,394,677.52 in unsecured debts.  Gaines testified that approximately $1.1 million of the unsecured debts are owed to shareholders of Debtor, affiliates of Debtor, or shareholders of affiliates of Debtor.

In the instant motions, Debtor seeks 1) authority to use what it asserts to be the cash collateral of Compass Bank; 2) authority to borrow additional funds from one of its affiliates; 3) authority to pay the prepetition claims of employees; 4) a prohibition to its utility companies from terminating service; and 5) a declaration, based on the automatic stay, as to its ability as against Compass Bank to pursue collection of the PPI note.

Compass Bank opposes the motion for use of cash collateral.  Compass Bank asserts that it owns the PPI note and its proceeds, and that Debtor lacks authority to collect the PPI note.  Compass Bank does not oppose the Debtor's use of cash

borrowed from one of its affiliates.

## Conclusions of Law

The starting point for analysis of the motions pending before the court is Debtor's request for a declaratory judgment. In the absence of collection of the PPI note, it is clear that there is no cash collateral as to which Debtor could seek use.

As a preliminary matter, the seeking of a declaratory judgment requires the filing of an adversary proceeding. See Rule 7001(9), Fed. R. Bankr. P.

Moreover, in seeking such relief, Debtor is attempting to obtain an advantage in what appears to be, at its root, a two party dispute between Debtor and Compass Bank regarding the ownership of the PPI note. The automatic stay ordinarily should not be used as both a shield and a sword. See In re A.H. Robins Co., 828 F.2d 1023 (4th Cir. 1987). See also In re Mirant Corp., 314 B.R. 347 (Bankr. N.D. Tex. 2004) and cases cited therein.

In the instant case, Debtor has not filed an adversary proceeding seeking a declaratory judgment as to the effect of the automatic stay. The court concludes that Debtor's request for a declaratory judgment should be denied without prejudice to the filing of an adversary proceeding. In addition, in light of the appearance that Debtor is attempting to obtain an unfair advantage in a two party dispute, the court will enter an order

to show cause why the above captioned case should not be dismissed.

With respect to the Debtor's motion for use of cash collateral, the court concludes that it is premature, because Debtor appears to lack a source for cash collateral until the PPI note is collected, and the question of ownership of any payments made by PPI has been determined.

With respect to Debtor's motion for approval of postpetition financing, Debtor has sought approval to borrow $200,000 for six months, at six percent interest, secured by a second lien on Debtor's assets.

Under Section 363(c)(3) of the Bankruptcy Code, The court may authorize the incurring of debt secured by a junior lien on property of the estate that is subject to a lien, only if the trustee (including debtor in possession) is unable to obtain unsecured credit allowable as an administrative expense.  Debtor presented no evidence as to efforts to obtain unsecured credit. The court concludes that the motion for authority to enter into debtor in possession financing should be denied without prejudice.

With respect to the motion to prohibit utility companies from terminating service, Debtor presented no evidence. The court concludes that the motion should be denied without prejudice.

With respect to the motion to pay the prepetition claims of employees, Debtor presented no evidence. The court concludes that the motion should be denied without prejudice.

Based on the foregoing, a separate conforming Judgment and Order to Show Cause will be entered.

Signed at Houston, Texas on April 21, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE